UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x
YASH RAJ FILMS (USA), INC.,

                                                Plaintiff,         **REPORT AND RECOMMENDATION**
                         - v -                                CV 08-2280 (CBA)(VVP)
ADDA RONG, INC. d/b/a Adda Rong,
MOHAMMED UDDIN d/b/a Adda Rong,
and JOHN DOES 1 through 20,
                                      Defendants.
----------------------------------------------------------x

       This matter was referred by the Honorable Carol B. Amon to the undersigned to issue a report and recommendation concerning the damages to be awarded to the plaintiff as against the defaulting defendants Adda Rong, Inc (hereinafter "Adda"), and Mohammed Uddin (hereinafter "Uddin"). The case involves the defendants' infringements of copyrights which are exclusively owned by the plaintiff Yash Raj Films (USA), Inc.,(hereinafter "Yash Raj"). *See* Complaint ¶¶ 5-6.

       **A.**       **ENTRY OF DEFAULT JUDGMENT**

       "It is well established that a party is not entitled to a default judgment as a matter of right; rather the entry of a default judgment is entrusted to the sound judicial discretion of the court." *Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d 277, 281 (D. Conn. 2001), *quoting Shah v. N.Y. State Department of Civil Services,* 168 F.3d 610, 615 (2d Cir. 1999) (internal quotations omitted). When deciding whether to enter default the court considers various factors, including (1) the amount of money involved; (2) whether issues of fact or of substantial public importance are at stake; (3) whether the default is largely technical; (4) whether the plaintiff has been substantially prejudiced by the delay; (5) whether the grounds for default are clearly established; (6) whether the default was caused by a good-faith mistake or excusable neglect; (7) how harsh an effect default would have; and (8) whether the court

believes it later would be obligated to set aside the default on defendant's motion. *Cablevision of Southern Connecticut v. Smith*, 141 F. Supp. 2d at 281 *citing* Moore's Federal Practice § 55.20 (2)(b) (3d ed. 1999). In civil actions, when a party fails to appear after given notice, the court normally has justification for entering default. *Bermudez v. Reid,* 733 F.2d 18, 21 (2d Cir. 1984).

The plaintiff has filed affidavits of a licensed process server attesting to service of the summons and complaint in this action upon the defendants. Defendant Adda Rong was served pursuant to Section 311(a)(1) of the New York Civil Practice Laws and Rules ("CPLR") by delivery of the summons and complaint to Ms. Ano, who the process server attests is an individual authorized to accept service on behalf of Adda Rong at its place of business in Jackson Heights, Queens. Service of the defendant Mohammed Uddin was accomplished by delivering such copies to a person of suitable age and discretion at Adda Rong, and mailing a copy of the same to the defendant's address in accordance with the provisions of Section 308(2) of the CPLR. Such methods of service are authorized by Rule 4 (c)(1) of the Federal Rules of Civil Procedure. The defendants have failed to interpose an answer, or otherwise respond to the complaint. Nor have the defendants responded to the plaintiff's application for default. The grounds for default are therefore clearly established, and there are no grounds for believing the default is based on a good-faith mistake or technicality. *See Cablevision Systems New York City Corporation v. Leach*, No. 01 Civ. 9515, 2002 WL 1751343, at *2 (S.D.N.Y. July 26, 2002) (default willful where defendant never responded to complaint, appeared or explained default). Finally, based on the defendants' inaction, it is unlikely that the court will be compelled at some future date to enter an order vacating the default judgment. Judgment by default should therefore be granted so long as liability and damages are appropriately established.

### B. LIABILITY

By virtue of the defendants' defaults, the well-pleaded allegations of the Complaint are deemed admitted, except as to the amount of the plaintiff's damages. *See, e.g.*, *Greyhound Exhibitgroup v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992), *cert. denied*, 113 S. Ct. 1049 (1993); *Au Bon Pain Corp. v. Artect, Inc.*, 653 F.2d 61, 65 (2d Cir. 1981). Thus, the court accepts the following facts as true.[1]

The plaintiff is the owner of the trade name "Yash Raj" which is registered with the United States Patent and Trademark Office. *See* Complaint ¶ 8. Yash Raj produces, acquires, licenses, owns, administers, and exploits copyrights it has obtained for various motion pictures and music sound recordings (hereinafter "the copyrighted works") produced in India. *Id.* ¶¶ 6, 17, Ex. A. The plaintiff has an unlimited right to exhibit, manufacture, compile, prepare derivative works of, reproduce, adapt, market and distribute the copyrighted works throughout the United States in theaters, as well as in formats such as video cassettes, DVDs, and CDs. *Id*. ¶¶ 6, 17. The plaintiff has affixed to each of the copyrighted works its registered "Y" logo mark. ("the registered mark"). *Id.* ¶¶ 7, 29, Ex. B. Legitimate CDs and DVDs of the copyrighted works are packaged in well-designed boxes and contain the distinctive registered "Y" logo, artwork, and the Yash Raj trade name on the packaging. *Id.* ¶ 21. The court further accepts as fact that the plaintiff produces high quality products and has developed a reputation that is widely and favorably known in the South Asian and Indian communities. *Id*. ¶ 22.

---

[1] Although the plaintiff alleges in the complaint various violations of federal law, the plaintiff's application for default and damages as set forth in the proposed judgment is limited to the defendants' violations of the Copyright Act, and therefore the court does not reach the related claims.

Defendant Adda Rong is a retail music and video business operating in Jackson Heights, New York. *Id.* ¶¶ 11-12. The defendant Uddin is employed at, and owns, operates, authorizes and directs the activities of, or otherwise controls Adda Rong, and derives an economic benefit therefrom. *Id.* ¶¶ 13-14. The allegations of the complaint establish that the defendants participated in the creation of illegal and improper compilations, preparation of derivative works, copying, manufacturing, production, or reproduction of the plaintiff's copyrighted works, and have offered them for sale and distribution at Adda Rong. *Id.* ¶¶ 14, 40, 43,45-48, 54, 63-64. The pleadings further establish that the defendant Uddin personally participated in, or had the right to supervise, direct and control the infringing activities at Adda Rong. *Id.* ¶¶ 14, 41, 74-76. The well-pleaded allegations of the complaint also establish that the plaintiff warned the defendants not to distribute unauthorized copies of the copyrighted works, and the defendants have ignored plaintiff's warning to cease such illegal conduct. *Id.* ¶¶ 34, 40.

In order to establish a claim for copyright infringement, the plaintiff must establish (1) ownership of a valid copyright, and (2) unauthorized copying of the copyrighted work or some other violation of the exclusive rights afforded to the owner by the Copyright Act. *See Twin Peaks Productions v. Publications Int'l. Ltd.,* 996 F.2d 1366, 1372 (2d Cir.1993); *Fonar Corp. v. Domenick*, 105 F.3d 99, 103 (2d Cir.1997).

Pursuant to section 410(c) of the Copyright Act, a certificate of copyright registration raises a presumption that the copyright is valid. *See* 17 U.S.C. § 410(c). Section 101 of the Copyright Act holds that a "'[c]opyright owner,' with respect to any one of the exclusive rights comprised in a copyright, refers to the owner of that particular right." 17 U.S.C. § 101. As the registered owners of the copyrights in question, the plaintiff is entitled to sue for infringement of

the copyrights. *See* 17 U.S.C. § 501(b); *Essex Music, Inc. v. ABKCO Music and Records, Inc.*, 743 F. Supp. 237, 241-42 (S.D.N.Y. 1990).

These facts are sufficient to establish Adda Rong's liability to the plaintiff for violation of the Copyright Act which states that,

> (a) Anyone who violates any of the exclusive rights of the copyright owner . . . . is an infringer of the copyright or right of the author, as the case may be.

17 U.S.C. § 501(a). Among the exclusive rights of the copyright owner is the right to reproduce, and to authorize others to reproduce, the copyrighted work in copies and to distribute the copies to the public by sale. *See* 17 U.S.C. § 106. The allegations of the Complaint also establish Uddin's individual liability in view of the assertions that he participated in and supervised the infringing activities. In this Circuit "all persons and corporations who participate in, exercise control over, or benefit from [a copyright infringement] are jointly and severally liable as copyright infringers." *Bartell v. Onbank, et al.,* No. 95 Civ 1807, 1996 WL 421189, *2 (N.D.N.Y.), *quoting Sygma Photo News, Inc. v. High Soc'y Magazine, Inc.,* 778 F.2d 89, 92 (2d Cir.1985). Therefore, damages and other relief should be assessed against both defendants.

### C. DAMAGES

Having provided notice to the defaulting defendants, the court is able to receive affidavits in lieu of holding an evidentiary hearing on the appropriate amount of damages to be awarded. *See, e.g., Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.,* 109 F.3d 105, 111 (2d Cir. 1997) ("We have held that, under rule 55(b)(2), it [is] not necessary for the District Court to hold a hearing, as long as it ensured that there was a basis for the damages specified in the default judgment."); *accord, Fustok v. ContiCommodity Serv., Inc.,* 873 F.2d 38, 40 (2d Cir. 1989); *Tamarin v. Adam Caterers, Inc.,* 13 F.3d 51, 54 (2d Cir. 1993). There being no objection

by any party to that procedure, the court has received and considered affidavits submitted by the plaintiff, and concludes that they provide a basis for the relief recommended below. The defendants have made no submissions.

The evidence offered in the plaintiff's submissions establish the following facts. Vaibhav Rajput, the Head of Operations for Yash Raj, is responsible for inquiring into and investigating copyright violations of motion pictures and audio sound recordings for which plaintiff holds copyrights. *See* Declaration of Vaibhav Rajput in Support of Plaintiff's Motion for Default Judgment, Statutory Damages, Attorney's Fees and Costs Against Defendants Adda Rong, Inc., and Mohammed Uddin ("Rajput Decl.") ¶¶ 1, 10. Rajput has been conducting such investigations into identifying unlawful duplications and distributions since 1998. *Id.* ¶ 10. Although Rajput's investigations are generally conducted through agents hired by the plaintiff, he has also personally visited locations which carry illegal duplications of the copyrighted works. *Id.* ¶ 10. His investigations in New York uncovered illegal sales of the plaintiff's copyrighted works at Adda Rong. *Id.* ¶ 11.

At some point prior to August 2007, the plaintiff hired an investigator to visit the defendants' store. *See* Declaration of Investigator in Support of Plaintiff's Motion for Default Judgment, Statutory Damages, Attorney's Fees and Costs Against Defendants Adda Rong, Inc., and Mohammed Uddin ("Mehta Decl.") ¶ 7. Since the investigator does extensive work in the Indian retail business community he uses the alias "Rajiv Mehta" so as not to compromise his undercover investigations. *See* Mehta Decl. ¶ 3. Mehta has working knowledge about how to identify legitimate, as well as unauthorized, copies of Indian motion pictures, including those owned by the plaintiff. *Id.* ¶ 4. He has also familiarized himself with the titles of plaintiff's

copyrighted works, and is able to identify the plaintiff's "Y" log, artwork, and packaging. *Id.* ¶ 5.

Mehta was instructed to visit Adda Rong to purchase unauthorized video cassettes, CDs, and DVDs which contained plaintiff's copyrighted works. *Id.* ¶¶ 6-7. Between August 2007 and May 2008, Mehta visited Adda Rong posing as a retail customer, and purchased DVDs containing illegitimate copies of the copyrighted works. *Id.* ¶¶ 7-9, Sched. A. Mehta observed that each of the products containing the plaintiff's copyrights he purchased from the defendants lacked one or more of the characteristics that are unique to the plaintiff's products. *Id.* ¶¶ 9-11. Mehta noted that the products did not contain the plaintiff's logo, the titles were handwritten in magic marker, the DVDs were blue indicating that they are recordable and originally purchased as blanks, the artwork was simpler than that used by the plaintiff; the packaging lacked cellophane or contained cellophane of an inferior quality; and some of the DVDs were sold in a form not use by the plaintiff in that the product contained compilations with plaintiff's copyrights and works of other companies. *Id.* ¶ 11. These findings led the investigator to conclude that the products were in fact illegitimate copies. *Id.* ¶¶ 8-9.

Rajput also personally examined the counterfeit products sold to the plaintiff's investigator and determined that each product contained unauthorized copies of the plaintiff's copyrighted works. *See* Rajput Decl. ¶ 15, Ex. W and X. Rajput review of the products purchased by the investigator revealed that the defendants have committed over one-hundred and twenty (120) infringements of twenty-one (21) copyrighted works. *Id.* ¶ 25. Following the investigations, in May 2008 an attorney for Yash Raj sent a letter to the defendants demanding

they cease and desist from selling unauthorized copies of the copyrighted works. *Id.* ¶ 12, Ex. Z. The defendants did not respond to the letter. *Id.*

The plaintiff is seeking $5,000 in statutory damages under the Copyright Act for each of the twenty-one (21) copyrighted works. The Copyright Act provides that,

> the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in this action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just.

17 U.S.C. § 504(c)(1). If there is a finding that the defendants' infringement was committed willfully the court in its discretion "may increase the award of statutory damages to a sum of not more than $150,000." 17 U.S.C. § 504(c)(2). In calculating a defendants' exposure for an award of statutory damages, the focus is on the number of works infringed, not the number of copies or the number of acts of infringement. *See, e.g., Twin Peaks Productions*, 996 F.2d at 1381; *Antenna Television v. Aegean Video Inc.*, No. 95-CV-2328, 1996 WL 298252, at *11 (E.D.N.Y. April 23, 1996); *Arclightz and Films Pvt. Ltd. v. Video Palace Inc.*, 303 F. Supp. 2d 356, 361 (S.D.N.Y. 2003).

The court has broad discretion in determining the range of statutory damages. *Fitzgerald Pub. Co. v. Baylor Pub. Co.,* 807 F.2d 1110, 1116 (2d Cir.1986). In making a statutory award determination, in addition to willfulness, courts consider such factors as the expenses saved and profits reaped by the defendant, the revenues lost by the plaintiff, and the deterrent effect of the award on other potential infringers. *Id.*, 807 F.2d at 1117; *see also F.W. Woolworth Co. v. Contemporary Arts, Inc.*, 344 U.S. 228, 234, 73 S.Ct. 222, 226, 97 L.Ed. 276 (1952). Statutory damages play a dual role in that they compensate for injury and deter wrongful conduct. *Yurman*

*Design, Inc.,* 262 F.3d at 113-114.  Statutory damages are appropriate in instances where it is difficult to determine plaintiff's actual damages.  *Van Der Zee v. Greenidge,* No. 03 CV 8659, 2006 WL 44020, at *1 (S.D.N.Y. 2006); *Granada Sales Corp. v. Aumer*, 2003 WL 21383821, at *2 (S.D.N.Y. June 2, 2003); *Latin Am. Music Co. v. Spanish Broad. Sys., Inc.,* 866 F. Supp. 780, 782 (S.D.N.Y.1994).  However, an award of statutory damages does not entitle the plaintiff to a windfall recovery.  *Warner Bros., Inc. v. Dae Rim Trading, Inc.,* 677 F. Supp. 740, 769 (S.D.N.Y.1988).

In order to establish willfulness, the plaintiff must prove that the defendants had actual knowledge that they were infringing plaintiff's copyrights, or acted with a reckless disregard of a strong probability that the conduct constituted infringement.  *See Island Software and Computer Service, Inc., v. Microsoft Corp.,* 413 F.3d 257, 263 (2d. Cir. 2005);  *Lipton v. Nature Co.,* 71 F.3d 464, 472 (2d Cir.1995); *N.A.S. Import Corp. v. Chenson Enters., Inc.*, 968 F.2d 250, 252 (2d Cir.1992); *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 112 (2d Cir.2001).  Knowledge "need not be proven directly, but may be inferred from the defendant's conduct."  *N.A.S. Import Corp*, 968 F.2d 250, 252, *citing Fallaci v. New Gazette Literary Corp.*, 568 F. Supp. 1172, 1173 (S.D.N.Y.1983).

The plaintiffs' have satisfactorily demonstrated that the defendants willfully infringed at least some of the copyrighted sound recordings.  Plaintiff's investigator and Rajput concluded that they observed over one-hundred  unauthorized copies of the copyrighted works being offered by the defendants to the public.  *See* Mehta Decl. ¶ 8 and Rajput Decl. ¶ 25.  The investigators inspections of the purchased unauthorized works revealed that all of the counterfeit products contained the same substandard packaging, inferior artwork, or the lack of plaintiff's

trademark logo. Therefore, at the very least the defendants had constructive notice that some of the DVDs, they were offering for sale to consumers were unauthorized copies.

The plaintiffs have further demonstrated that the defendants also had actual knowledge that their actions constituted copyright infringement. Following the visits by the inspector, the plaintiff sent a cease and desist letter to the defendants advising them that they were infringing the plaintiff's copyrights, and warned the defendants of the potential legal as well as monetary consequences continuing infringement could bring. *See* Rajput Decl. ¶ 12, Ex. Z.

Despite demonstrating that the defendants' actions were willful, the plaintiff has provided little guidance concerning the extent of the losses suffered because of the defendants' infringing activities.[2] The plaintiffs offer very little evidence to demonstrate the revenue lost from the defendants' failure to sell legitimate copyrighted recordings. The plaintiff fails to demonstrate the market value of the DVDs, CDs, and videocassettes offered for sale by the defendants had they been legitimate. Despite sending an investigator to Adda Rong on numerous occasions, the plaintiff has offered no evidence establishing the size of the store, the number of shelves containing CDs, DVDs, or cassettes, an approximation of the total number of items being offered for sale, or the number of customers in the store – information which would enable the court to draw inferences about the scale of the defendants' business. Absent such information, the court is unable to gauge the volume of unlawful sales that took place at Adda Rong and the extent of the potential impact of the defendants' infringing activities.

---

[2]The copyright works infringed are listed in the Complaint on Schedule A., as well as on Schedule A attached to the Mehta Declaration.

Lost revenues or profits, however, are only some of the considerations in setting statutory damages. In addition, any award of statutory damages should be sufficient to penalize the defendant, as the plaintiff has established that the defendant's conduct was undertaken willfully. The defendants obtained and offered for sale goods featuring the copyrighted works they must have known they were not authorized to sell. The DVD products purchased form the defendants were home-made DVDs with plaintiff's motion picture titles on hand-written labels, and contained artwork unique to the plaintiff combined with that of other owners of Indian films. *See* Rajput Decl. ¶ 16, Ex W1-W12. Obviously, the purpose of offering illegitimate recordings for sale at a cheaper rate than legal copies was to attract customers to the defendants' business establishment for commercial gain. Absent substantial financial penalties, the defendants will likely continue to illegally offer for sale plaintiff's copyrighted works, and other such establishments will follow suit. The plaintiff cannot practicably investigate all these infractions, nor should they be expected to do so.

The plaintiff has also suffered losses that are not easily quantified, including damage to reputation because of the inferior quality and appearance of the infringing recordings. Moreover, the sales of counterfeit products could lead to the erosion of the plaintiff's customer base, because the commercial establishments who rightly sell legitimate works will find it difficult to compete with those who do not.

In order to preserve the plaintiff's reputation and customer base, the defendants must be held accountable for an amount significant enough to deter such conduct. Absent such a deterrent, the defendants and other potential infringers will be encouraged to violate the law, as infringement would be more cost effective than dealing with the plaintiff. The plaintiff correctly

asserts that they may seek at a minimum seek statutory damages of up to $30,000 per infringement, and have chosen not to seek such an amount. Therefore, although the extent of the defendants' infringement is not entirely clear from the evidence presented, the proof offered by the plaintiff is more than sufficient to justify the damages sought. Given the above considerations, the court recommends that statutory damages be awarded in an amount equal to $5,000 per unauthorized copyrighted work, for a total award of $105,000.

### D. INJUNCTIVE RELIEF

In addition to statutory damages, the plaintiff also seeks injunctive relief. Specifically the plaintiff seeks to have the defendants enjoined from infringing the copyrighted works. In order to be granted an injunction the movant must show that it is entitled to injunctive relief under the applicable statutes and that it meets the prerequisites for the issuance of an injunction. *King Vision Pay-Per-View, Ltd. v. Lalaleo*, 429 F. Supp. 2d 506, 507 (E.D.N.Y. 2006). Under the Copyright Act the court may "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502 (a). Permanent injunctions are appropriate when infringement has been established and there is a substantial likelihood of future violations. *Boisson v. Banian, Ltd.*, 280 F. Supp. 2d 10, 15 (E.D.N.Y. 2003), *citing Central Point Software, Inc. v. Global Software & Accessories, Inc.,* 880 F. Supp. 957, 966 (E.D.N.Y.1995). The Second Circuit has held that an injunction should not be granted unless, absent an injunction, the movant will suffer irreparable harm. *See Main Events/Monitor Productions v. Batista*, No. 96 CV 5089, 1998 WL 760330, at *1 (E.D.N.Y. Aug. 26, 1998). In order to satisfy the irreparable harm requirement, the moving party must show that the injury it will suffer is "likely and imminent" and that "such injury is not capable of

being fully remedied by monetary damages." *NAACP v. Town of East Haven*, 70 F.3d 219, 224 (2d Cir. 1995).

In actions for copyright infringement, the Second Circuit has repeatedly held that once a *prima facie* case has been made, irreparable harm is generally presumed. *Random House, Inc. v. Rosetta Books LLC,* 283 F.3d 490, 491 (2d Cir. 2002). Thus, the court has found that the plaintiff has established the defendants' liability for copyright infringement, the reasonable harm requirement is met. Therefore, the court recommends that the defendants be permanently enjoined from infringing any of plaintiff's copyrighted works in any manner including without limitation selling, offering to sell, or distributing unauthorized copyrighted works.

Section 503(b) of the Copyright Act states that,

> As part of a final judgment or decree, the court may order the destruction or other reasonable disposition of all copies. . . found to have been made or used in violation of the copyright owner's exclusive rights, and of all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonorecords may be reproduced.

17 U.S.C. § 503(b).

As with injunctive relief, the court may order impoundment or forfeiture if the plaintiff has established a *prima facie* case for infringement. *U2 Home Entertainment, Inc.,* 2003 WL 22889738, at *1. Forfeiture should only be ordered where the movant has established a showing of irreparable injury, and that alternative legal remedies are inadequate. *RSO Records, Inc. v. Peri,* 596 F. Supp. 849, 863 (S.DN.Y. 1984). Although, forfeiture and the ordered destruction of infringing works is within the court's discretion, such relief is appropriate to ensure against future infringements. *Antenna Television v. Aegean Video, Inc.,* No. 95-CV-2328 ERK, 1996

WL 298252, at *13 (E.D.N.Y. Apr. 23, 1996). Such relief may extend to any equipment used for infringing purposes as well. *RSO Records Inc. v. Peri,* 596 F. Supp at 863; 17 U.S.C. § 503(b).

Given the defendants' infringement of the plaintiff's copyright works, the forfeiture of the infringing copies is appropriate to protect against future infringement. Destruction or forfeiture of the infringing copies should be ordered as a matter of course because the defendants have no right to possess them. Therefore, the issuance of an order requiring the delivery of all unauthorized copies in the defendants' possession to the plaintiff is appropriate.

E. ATTORNEY'S FEES AND COSTS

The plaintiff also seeks attorney's fees and costs, both of which are available to a prevailing party under the Copyright Act at the court's discretion. *See* 17 U.S.C. § 505. The plaintiffs are requesting $12,556.73 for attorney's fees. *See* Declaration of William M. Poppe in Support of Plaintiff's Motion for Default Judgment, Statutory Damages, Attorney's Fees and Costs Against Defendants Adda Rong, Inc., and Mohammed Uddin ("Poppe Decl.") ¶¶ 19-21, Ex. BB, and Supplemental Declaration of William M. Poppe in Support of Plaintiff's Motion for Default Judgment, Statutory Damages, Attorney's Fees and Costs Against Defendants Adda Rong, Inc., and Mohammed Uddin ("Supp. Poppe Decl.") ¶ 6, Sched. A.

To determine a fee award in this circuit, the court is charged with deciding the "presumptively reasonable fee" for the work performed in the case. *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 190 (2d Cir. 2008). The first step in this process is for the court, in the exercise of its considerable discretion, "to bear in mind *all* of the case-specific variables that we and other courts have identified as relevant to the reasonableness of attorney's fees in setting a reasonable

hourly rate." *Id.*, 522 F.3d at 190 (emphasis in original); *accord, McDaniel v. County of Schenectady, et al.*, ___ F.3d ___, No. 07-5880-cv, 2010 WL 520899, at *8 (2d. Cir. Feb. 16, 2010). In determining this "reasonable hourly rate" the court is to be guided by what a paying client would be willing to pay, keeping in mind that a reasonable paying client would wish "to spend the minimum necessary to litigate the case effectively." *Arbor Hill*, 522 F.3d at 190. The court then calculates the "presumptively reasonable fee" by multiplying the number of hours reasonably expended on the litigation by the reasonable hourly rate. *Id.*; *see also Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). To facilitate this analysis, the Second Circuit requires that attorneys applying for court-ordered compensation document the application with contemporaneous time records specifying, for each attorney, the date, the hours expended, and the nature of the work done. *See New York State Ass'n for Retarded Children, Inc. v. Carey*, 711 F.2d 1136, 1147-48 (2nd Cir. 1983). Where adequate records are not submitted, the court may deny fees altogether or reduce the award. *See Carey*, 711 F.2d at 1148; *Private Sanitation Union Local 813, Int'l Bhd. of Teamsters v. Gaeta-Serra Associates, Inc.*, No. 02–CV-5526, 2005 WL 2436194, at *3-4 (E.D.N.Y. August 12, 2005). In addition, the court may exclude hours that it finds to be excessive, duplicative, or unnecessary. *Duke v. County of Nassau,* 97-CV-1495, 2003 WL 23315463, at *1 (E.D.N.Y. Apr. 14, 2003) (*citing Hensley,* 461 U.S. at 434; *Luciano*, 109 F.3d at 116).

The application for fees here seeks an award for the work of but one attorney, William Poppe, Esq., who billed at the rate of $275 per hour. That rate is well within the parameters of the rates charged in this community for copyright litigation of the type involved here, and the court therefore has no difficulty adopting that rate as the rate a reasonable paying client would be

willing to pay. The application is supported by adequately detailed time records reflecting the hours worked and the tasks performed. *See* Supp. Poppe Decl. Ex. A. An examination of those records yields the conclusion that the hours spent on the tasks identified were entirely reasonable. There is one mistake, however, in the billing records, twin entries on October 5, 2008 that are exact duplicates of each other specifying 5.75 hours spent on precisely the same tasks.[3] The court thus eliminates one of the two entries in reaching the conclusion that the fee award here should be calculated on the basis of 39.91 hours of attorney time at the rate of $275 per hour, yielding a total fee of $10,975.25.

The plaintiff also seeks an award of $519.17 for costs. A prevailing party is entitled to compensation for out-of-pocket expenses that are normally charged to the client. *United States Football League v. National Football League,* 887 F.2d 408, 416 (2d. Cir. 1989). The plaintiff's submissions disclose explanations of expenses including copying costs, filing fees and fees for service of process. *See* Kaplan Decl. ¶ 6, Exh. 5. These types of expenditures are generally compensable. *See, e.g., Levy v. Powell,* No. CV 00-4499, 2005 WL 1719972, at *12 (E.D.N.Y. July 22, 2005); *Rotella v. Board of Educ. of City of New York*, No. CV-01-0434, 2002 WL 59106, at *1 (E.D.N.Y. Jan. 17, 2002); *Hine v. Mineta*, 253 F. Supp. 2d 464, 467 (E.D.N.Y.2003). Therefore, the court recommends that the plaintiff be awarded $519.17 for costs.

---

[3]That this is an erroneous duplicate entry is confirmed by comparing the time records annexed as Exhibit A to the Supplemental Poppe Declaration with the time records annexed as Exhibit BB to the initial Poppe Declaration. The latter contain only one entry for 5.75 hours on October 5, 2008.

## CONCLUSION

In accordance with the above considerations, the undersigned hereby **RECOMMENDS** that,

1. the plaintiff be awarded $105,000 in statutory damages, as well as $10,975.25 in attorney's fees and $519.17 in costs;

2. the defendants be permanently enjoined from infringing any of plaintiff's respective copyrights in any manner including without limitation selling, offering to sell, or distributing unauthorized copies of the plaintiff's copyrighted works; and

3. an order be entered requiring the delivery of all unauthorized copyrighted works in the defendants' possession to the plaintiff.

\*      \*      \*      \*      \*

Any objections to the Report and Recommendation above must be filed with the Clerk of the Court within 14 days of receipt of this report. Failure to file objections within the specified time waives the right to appeal any judgment or order entered by the District Court in reliance on this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see, e.g., Thomas v. Arn*, 474 U.S. 140, 155, 106 S.Ct. 466, 474, 88 L.Ed.2d 435 (1985); *IUE AFL-CIO Pension Fund v. Herrmann*, 9 F.3d 1049, 1054 (2d Cir. 1993); *Frank v. Johnson*, 968 F.2d 298 (2d Cir.), *cert. denied*, 113 S. Ct. 825 (1992); *Small v. Secretary of Health and Human Serv.*, 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

**Counsel for the plaintiff shall serve a copy of this Report and Recommendation on the defendants by overnight mail, return-receipt requested, and file proof of such service in the record.**

                                                               *Viktor V. Pohorelsky*
                                                            VIKTOR V. POHORELSKY
                                                            United States Magistrate Judge

Dated: Brooklyn, New York
         March 12, 2010